UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:17-CR-230 (JCH) |
| | : | CRIM. NO. 5:92-CR-70 (JCH) |
| vs. | | |
| | : | March 31, 2020 |
| JOHN J. MCCARTHY | | |

**EMERGENCY MOTION FOR IMMEDIATE TRANSFER TO A HALFWAY HOUSE
OR, IN THE ALTERNATIVE, FOR COMPASSIONATE RELEASE**

 Defendant John J. McCarthy respectfully requests that the Court release him from MDC Brooklyn, and allow him to serve the remainder of his sentence (which is less than five weeks) at a halfway house.  In the alternative, Mr. McCarthy requests that the Court order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) and make his residence at a halfway house a condition of supervised release until a mental health placement is secured.[1]  This motion should be granted due to the "extraordinary and compelling reasons" confronting the federal prison system, and MDC Brooklyn, in particular, by the pandemic of COVID-19, and the unique risk that Mr. McCarthy faces as a 65-year-old inmate with asthma, COPD, and other serious health issues.

 We respectfully ask the Court to consider this motion on an expedited basis, as each day in custody brings renewed and unthinkable risk to Mr. McCarthy's life.

---

[1] It is unclear at this time whether Mr. McCarthy filed an administrative relief request with MDC Brooklyn likewise seeking compassionate release on the same grounds as submitted herein, because undersigned counsel is unable to communicate with Mr. McCarthy.  Because of the urgency of the spread of COVID-19 in New York, we respectfully ask the Court to waive the 30-day waiting period for any response by the warden.  Waiting for a response could cost Mr. McCarthy his life.

In support of his motion, Mr. McCarthy represents the following:

1. On January 3, 2019, the Court sentenced Mr. McCarthy to 38 months' imprisonment with credit for time served from August 24, 2017. Doc. # 81. The Court also imposed a 5-year term of supervised release with special conditions, including the following:

> 1. Upon completion of the term of imprisonment, the defendant shall immediately begin his term of supervised release in a lock down facility for a 45 day period where he shall receive intensive mental health treatment and medication as called for in the assessments of his then current condition. Upon completion of the 45 day intensive mental health treatment program, the defendant shall then be released into an intensive, inpatient, mental health treatment program (level 3.5) for 6 months where he shall receive appropriate medication and treatment. Upon completion of the 6 month, inpatient program, the defendant shall participate in an intensive, outpatient, mental health treatment program.

Id. The Judgment included the following judicial recommendation to the U.S. Bureau of Prisons (BOP):

> The Bureau of Prisons shall not provide the defendant access to any early release programs as part of his sentence in light of the special conditions of supervised release that have been imposed immediately upon the defendant's release.

Id.

2. In accordance with the Court's recommendation, the BOP has not provided Mr. McCarthy with access to any early release program. He is currently confined at MDC Brooklyn, which was both an unexpected and unfortunate turn of events, with an estimated release date of May 4, 2020.

3. Undersigned counsel, the Federal Defender Office Mitigation Specialist, and Senior United States Probation Officer Patrick Norton have been working together for about a year to secure Mr. McCarthy's admission to a facility where he can receive intensive mental health and substance abuse treatment upon release from prison consistent with the Court's order. In June 2019, undersigned counsel, the Federal Defender Office Mitigation Specialist, and Officer Norton visited Mr. McCarthy

2

at FCI Cumberland in Maryland. Thereafter, we worked together on the discharge plan, and various status reports were provided to the Court, which will not be repeated here. The Federal Defender Office initially identified Merritt Hall at Connecticut Valley Hospital as a possible treatment facility upon discharge from BOP. Merritt Hall had previously accepted Mr. McCarthy at the time of sentencing, but after Mr. McCarthy's last year in the BOP, Merritt Hall subsequently denied Mr. McCarthy on the basis that he required a higher level of mental health care. The Federal Defender Office and Officer Norton were in the process of asking Merritt Hall to reconsider its decision, a process which then became moot when the facility stopped admitting new patients indefinitely due to the outbreak of COVID-19. Staff at Merritt Hall suggested Greater Bridgeport Mental Health Center (GBMHC), a state-operated in-patient mental health facility that offers a variety of services to meet the needs of people with prolonged psychiatric and co-occurring disorders who require hospitalization and rehabilitation before returning to the community. The Federal Defender Office, working with Officer Norton, referred Mr. McCarthy to GBMHC, and the clinical team there is currently reviewing his application. Meanwhile, to facilitate Mr. McCarthy's ultimate discharge from BOP, Mr. McCarthy was recently moved out from FCI Cumberland for transfer to FCI Danbury. It was expected that Mr. McCarthy would be at Danbury, at which time GBMHC staff planned to interview him, and that he would ultimately be discharged from Danbury. However, that never happened, because Mr. McCarthy was in transit at MDC Brooklyn when the BOP shut down all movement of inmates between facilities. Due to the near-chaotic state of affairs at MDC Brooklyn, GBMHC staff have been unable to connect with Mr. McCarthy, facilitate his screening, or speak with current BOP mental health staff (if any). In addition, undersigned counsel has only been able to speak with Mr.

3

McCarthy once briefly, in spite of many attempts to do so. Moreover, neither Officer Norton nor undersigned counsel has been able to visit Mr. McCarthy as planned prior to the COVID outbreak.

      4. Extraordinary events that could not have been foreseen at the time of sentencing have made his current state of confinement at MDC Brooklyn extremely dangerous for Mr. McCarthy. In recent months, COVID-19 has spread across the globe and throughout the United States. As of March 31, 2020, COVID-19 has sickened over 796,000 people, leading to at least 38,556 deaths worldwide.[2] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[3] President Trump has declared a national emergency. The Centers for Disease Control and Prevention ("CDC") have issued guidance related to the deadly effects of COVID-19 on certain high-risk patients of the population. The CDC identified the population most at risk of death from the disease to include adults 60 years old with chronic medical conditions such as lung disease. For these individuals, the CDC warned to take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[4]

---

[2] Coronavirus Map: Tracking the Global Outbreak, N.Y. TIMES (updated daily), https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html (last visited Mar. 31, 2020).

[3] Press Release, World Health Organization, WHO Director-General's opening remarks at the media briefing on COVD-19 – 11 March 2020, (March 11, 2020), available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[4] People Who Are At Risk For Serious Illness From COVID-19, Ctrs. for Disease Control & Prevention (Mar. 12, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fspecific-groups%2Fpeople-at-higher-risk.html.

5.  New York City is the epicenter of the COVID-19 epidemic in the United States.[5] As of March 31, 2020, there are over 67,174 cases of COVID-19 in New York, and more than 1,224 people have died from the virus.[6] On March 21, 2020, a person jailed at MDC Brooklyn was diagnosed with COVID-19, the first coronavirus case of a detainee in the federal prison system.[7] On March 23, 2020, an inmate housed at MCC New York tested positive for the virus.[8] As of March 31, 2020, eight people in BOP custody in New York City have tested positive.[9] In addition, four staff at MDC Brooklyn and two staff at MCC New York have tested positive.

6.  On March 27, 2020, four inmates at MDC Brooklyn filed a class action lawsuit seeking the release of approximately 540 inmates most vulnerable to succumbing to COVID-19. See Class Action Petition Seeking Writ of Habeas Corpus Under 28 U.S.C. § 2241, Chunn v. McBride, No. 1:20-cv-01590-RPK, Doc. # 1 (E.D.N.Y Mar. 27, 2020). The lawsuit alleges that MDC Brooklyn's warden has not taken steps to protect the petitioners from the substantial risk of harm posed by COVID-19, nor could he under MDC Brooklyn's current conditions. See id.

---

[5] New York Becomes 'Epicenter' of Coronavirus Pandemic, POLITICO N.Y. HEALTH CARE (Mar. 25, 2020), available at https://www.politico.com/states/new-york/newsletters/politico-new-yorkhealth-care/2020/03/25/new-york-becomes-epicenter-of-coronavirus-pandemic-333669.

[6] Coronavirus in the U.S.: Latest Map and Case Count, N.Y. TIMES (updated daily), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited Mar. 31, 2020). These numbers almost certainly underrepresent the true scope of the crisis; test kits in the United States have been inadequate to meet demand.

[7] Craig McCarthy, First Federal Inmate Tests Positive For Coronavirus, N.Y. POST (Mar. 22, 2020, 10:06 AM), https://nypost.com/2020/03/22/first-federal-inmate-tests-positive-for-coronavirus/.

[8] Walter Palvo, Inmate at MCC New York Tests Positive For COVID-19, FORBES (Mar. 24, 2020, 5:30 PM EDT), https://www.forbes.com/sites/walterpavlo/2020/03/24/inmate-at-mcc-new-york-tests-positive-for-covid-19/#92180492a0ed.

[9] See COVID-19 Tested Positive Cases, U.S. Bureau of Prisons (updated daily), https://www.bop.gov/coronavirus (last visited Mar. 31, 2020).

7. Mr. McCarthy is not only confined in a particularly dangerous facility and city; he is also especially vulnerable to the virus because of his age and health. Mr. McCarthy is 65 years old. Due to his age alone, he is at higher risk of serious illness or death if he contracts COVID-19. Further, Mr. McCarthy is also vulnerable because his health is extremely fragile and he suffers from a host of medical ailments. Mr. McCarthy has been diagnosed with significant physical health conditions, including chronic obstructive pulmonary disease (COPD) and asthma, respiratory conditions that greatly increase Mr. McCarthy's risk of death if infected with the virus. See Doc. # 73-3 (Dec. 12, 2018 BCC Chart Summary) & Doc. # 73-6 (BOP Health Problems). Given his age and these medical conditions, contracting COVID-19 could be a death sentence for Mr. McCarthy.[10]

8. Given his vulnerabilities, the last place Mr. McCarthy should be is prison. The *New York Times* recently explained why jails are a much more dangerous place to be than even a cruise ship.[11] Jails and prisons are sites of disproportionate infectious disease rates.[12] Conditions of pretrial confinement create the ideal environment for the transmission of contagious diseases.[13] Incarcerated people have poorer health than the general population, and even in the best of times, medical care is

---

[10] See Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) — United States, February 12–March 16, 2020," Ctrs. for Disease Control & Prevention Report (Mar. 18, 2020), available at https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm ("a majority of coronavirus disease 2019 ("a majority of coronavirus disease 2019 (COVID-19) deaths have occurred among adults aged $\geq$60 years and among persons with serious underlying health conditions.").

[11] See An Epicenter of the Pandemic Will Be Jails and Prison, If Inaction Continues, N.Y. TIMES (Mar. 16, 2020), available at https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html.

[12] Leonard S. Rubenstein, et al., HIV, Prisoners, and Human Rights, LANCET (July 14, 2016), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(16)30663-8/fulltext.

[13] Joseph A. Bick, Infection Control in Jails and Prisons, 45 CLINICAL INFECTIOUS DISEASES 8, 1047-1055 (Oct. 15, 2007), available at https://doi.org/10.1086/521910.

6

limited in federal pretrial detention centers.[14] The attached expert declaration of Dr. Jaime Meyer likewise explains the particular risks of contagious diseases in prison. See Exhibit A (expert declaration of Dr. Jaime Meyer, Yale Law School Liman Center Affiliate, filed in numerous cases).

9. On March 20, 2020, Judge Meyer granted an emergency motion for temporary release from Wyatt for a 62-year-old defendant awaiting sentencing. See United States v. Fellela, No. 3:19-CR-79-JAM, 2020 WL 1457877 (D. Conn. Mar. 20, 2020) (Meyer, J.) In his order, Judge Meyer addressed the conditions of confinement at Wyatt:

> According to an inquiry through the U.S. Marshals Service of the Wyatt facility, there are more than 700 prisoners housed at Wyatt of which more than 500 prisoners are housed in two-person cells and more than 150 prisoners are housed in more-than-two-person cells. There are between 20 to 70 persons at one time in general dayroom areas, and up to 15 persons are allowed in the recreation area at one time. All levels of government nationwide have recently taken drastic measures in light of the COVID-19 pandemic to promote "social distancing" and to prohibit the congregation of large numbers of people with one another. But, as is true for most jails and prisons, the conditions of confinement at Wyatt are not compatible with these safeguards.

Id. at *1. These concerns are even more applicable to Mr. McCarthy, who is housed at a facility where an inmate and four staff members have already tested positive for COVID-19.

10. Judges around the country have released defendants in light of the extraordinary risk posed by the COVD-19 pandemic. See, e.g., Order on Defendant Grobman's Amended Motion for Release Pending Sentencing, United States v. Grobman, No. 1:18-cr-20989-RKA, Doc. # 397 at 2 (S.D. Fla. Mar. 29, 2020) (releasing defendant convicted after trial of fraud scheme in light of

---

[14] Laura M. Maruschak, et al., Medical problems of State and Federal Prisoners and Jail Inmates, 2011-12, Bureau of Justice Statistics Special Report, NCJ 248391 (rev. Oct. 4, 2016), available at https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

7

"extraordinary situation of a medically-compromised detainee being housed at a detention center where it is difficult, if not impossible, for [the defendant] and others to practice the social distancing measures which government, public health and medical officials all advocate"); Amended Order, United States v. Powell, No. 1:94-cr-316-ESH, Doc. # 98 at 1 (D.D.C. Mar. 28, 2020) (granting motion for compassionate release for 55-year-old defendant with asthma and sleep apnea in light of COVID-19 and finding it "would be futile" to require defendant to first exhaust administrative remedies); United States v. Harris, No. 1:19-cr-356-RDM, 2020 WL 1482342, *1 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); Order, United States v. Copeland, No. 2:05-cr-135-DCN, Doc. # 662 at 9 (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic); United States v. Perez, No. 19 CR. 297 (PAE), 2020 WL 1329225, *1 (S.D.N.Y. Mar. 19, 2020) (Engelmeyer, J.) (releasing defendant with "serious progressive lung disease and other significant health issues" due to the "heightened risk of dangerous complications should he contract COVID-19"); United States v. Stephens, 2020 WL 1295155, *2, __F. Supp.3d__ (S.D.N.Y. Mar. 19, 2020) (Nathan, J.) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic") (Nathan, J.); see also Minutes of [In Chambers] Invitation To File an Ex Parte Request for Reconsideration, United States v. Avenatti, No. 8:19-cr-61-JVS, Doc. # 123 (C.D. Cal. Mar. 25, 2020) (sua sponte inviting defendant to move for reconsideration of a just-denied motion for release "[i]n light of the evolving nature of the Covid-19 pandemic").

11. On March 26, 2020, the Attorney General issued a memorandum to the Director of BOP, outlining a new policy by the United States Department of Justice ("DOJ") to deal with confined inmates who are most vulnerable to the COVID-19 virus. See Exhibit B ("Memorandum for Director of Bureau [of] Prisons: Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic," Office of the Attorney General, March 26, 2020). This memorandum was issued "to ensure that [the BOP] utilize[s] home confinement, where appropriate, to protect the health and safety of BOP personnel and the people in our custody." Id. at 1.

12. According to the Attorney General's directive, Mr. McCarthy would be among those inmates who receive priority treatment from the BOP for transfer to home confinement to complete his unserved portion of incarceration. However, the Judgment in this case instructed the BOP to "not provide the defendant access to any early release programs as part of his sentence," in light of the supervised release conditions. See Doc. # 81. Even if the BOP were inclined to disregard this recommendation, we do not know how long the BOP would take to effectuate the Attorney General's directive, and the COVID-19 virus will not wait to infect its victims. Mr. McCarthy is one of the most vulnerable victims to this potentially deadly disease and is in the most vulnerable place to be infected: an overcrowded prison where he cannot take the self-care measures prescribed by the CDC and where an inmate has already been diagnosed with COVID-19. Moreover, the original plan intended by the undersigned counsel, Officer Norton, and the Court is not available now, and further contingency planning is being hindered by Mr. McCarthy's placement at MDC Brooklyn. We therefore, ask the Court to order the BOP to immediately release Mr. McCarthy to a halfway house. From the halfway house, we will be in a better position to facilitate Mr. McCarthy's admission to a mental health treatment facility such as GBMHC.

13. Alternatively, given that Mr. McCarthy is 65 years old and suffers from significant underlying health issues that make him exceptionally vulnerable to COVID-19, compelling and extraordinary circumstances exist to support compassionate release at this unique time in our country's history. There is an urgent need to act now, before the virus spreads further within MDC Brooklyn and Mr. McCarthy becomes infected.

14. Reasons beyond medical illness, age, and family circumstances can qualify as "extraordinary and compelling reasons" for resentencing. See Commentary to U.S.S.G. § 1B1.13, Application Note 1(A) (including a category for "Other Reasons," when there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."). And with the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to resentence prisoners under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons."

15. Further, this Court can construe any exhaustion requirement as futile given the urgency of this national emergency and rapid spread of the pandemic. Indeed, courts throughout the country have waived the administrative exhaustion requirements under the First Step Act where circumstances warrant. See Washington v. BOP, No. 1:19-CV-01066, 2019 WL 6255786, *2 (N.D. Ohio July 3, 2019) (in addressing motion for recalculation of good time credit under the First Step Act, the court explained that "[t]he failure to exhaust administrative remedies may be excused if seeking administrative remedies would be futile."); Order Requiring Calculation of Good Time Credit, United States v. Walker, No. 3:10-cr-00298-RRB-1, Doc. # 110 (D. Or. Feb. 7, 2019) (finding that, although the defendant failed to exhaust administrative remedies, the Court had jurisdiction to order recalculation of defendant's good time credit under the First Step Act and to order defendant's release

10

if his term of imprisonment had expired); see also Gurzi v. Marques, No. 18-CV-3104-NEB-KMM, 2019 WL 6481212, *2 (D. Minn. Oct. 10, 2019) (despite prisoner's failure to exhaust administrative remedies, addressing the merits of prisoner's objections to his designation, in part under the First Step Act, as "the Court observes that it has the authority to proceed to the merits of the case rather than rely on a failure to exhaust when appropriate.").

16. The Bureau of Prisons has known for months of the impending COVID-19 crisis, creating a further reason to excuse Mr. McCarthy's failure to exhaust all administrative remedies. Because the BOP was on notice of the potential dangers to inmates like him, Mr. McCarthy should not be required to wait while the BOP takes additional time addressing his administrative request.

17. Although compassionate release to a treatment facility would be appropriate under these circumstances, release to a halfway house as a condition of supervised release would facilitate the ability of GBMHC to screen Mr. McCarthy, and would also allow Mr. McCarthy to pursue alternative placements, opportunities that have been denied to him at MDC Brooklyn.

18. The persistent risk to Mr. McCarthy's health outweighs any potential benefit, if any, to keeping Mr. McCarthy at MDC for another 34 days. Mr. McCarthy's pre-existing health conditions, his age, the rapidly advancing COVID-19 outbreak, and the inability, while in prison, to take self-care measures directed by the CDC to remain safe during the outbreak, warrant a reduced sentence in his case.

19. Undersigned counsel has consulted with Senior United States Probation Officer Patrick Norton regarding this motion, and he has stated that he wholeheartedly agrees with the relief requested herein.

20.  Undersigned counsel provided a draft of this motion to U.S. Attorney John H. Durham in advance of filing.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | THE DEFENDANT, <br> John J. McCarthy |
|  | OFFICE OF THE FEDERAL DEFENDER |
| Dated: March 31, 2020 | /s/ Kelly M. Barrett <br> Kelly M. Barrett <br> First Assistant Federal Defender <br> 265 Church Street, Suite 702 <br> New Haven, CT 06510 <br> Phone: (203) 498-4200 <br> Bar No.: ct27410 <br> Email: kelly_barrett@fd.org |
| *Assisting on the Brief:* | Andrew P. Giering <br> Research and Writing Attorney <br> 10 Columbus Boulevard, Floor 6 <br> Hartford, CT 06106 <br> Phone: (860) 493-6260 <br> Bar no.: ct29332 <br> Email: andrew_giering@fd.org |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kelly M. Barrett
Kelly M. Barrett