UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA, | : | CRIM. CASE NO. |
| --- | --- | --- |
| | : | 3:17-CR-0230 (JCH) |
| | : | 3:92-CR-0070 (JCH) |
| v. | : | |
| | : | |
| JOHN MCCARTHY, | : | |
| Defendant. | : | APRIL 8, 2020 |
| | : | |

**RULING ON DEFENDANT'S EMERGENCY MOTION (Doc. No. 88)**

**I.   INTRODUCTION**

Defendant John McCarthy ("McCarthy") moves for immediate transfer to a halfway house or, in the alternative, compassionate release under section 3582 of title 18 of the United States Code.  See Emergency Motion (Doc. No. 88).  McCarthy has filed an identical Motion in his other criminal case.  See Case No. 3:92-CR-0070, Doc. No. 487.  The Government opposes.  See Memorandum in Opposition (Doc. No. 93).

On April 2, April 3, and April 6, the court held telephonic conferences in an attempt to explore the possibility of working with the Bureau of Prisons ("BOP") to coordinate the transfer of McCarthy from MDC Brooklyn to a halfway house in Connecticut without modifying or reducing McCarthy's sentence.  See Docs. No. 96, 101, and 103.  These efforts were unsuccessful.  On April 8, the court heard oral argument on the Emergency Motion via videoconference.  See Doc. No. 107.

For the reasons that follow, McCarthy's Motion for compassionate release is granted. McCarthy's sentence is reduced to time served pursuant to Section 3582(c)(1)(A) of title 18 of the United States Code, and he shall be immediately released from BOP custody.  Upon his release, McCarthy shall be subject to the

1

additional conditions imposed in the Court's Order of Release.  All other aspects of McCarthy's sentence remain unchanged.[1]

## II.     BACKGROUND

On January 4, 2019, McCarthy was convicted by guilty plea of one count of armed bank robbery in violation of section 2113(a) and 2113(d) of title 18 of the United States Code.  See Judgment (Doc. No. 81).  This court sentenced McCarthy to a term of imprisonment of 38 months, followed by a term of supervised release of five years.  Id.  The court also imposed several Special Conditions of Supervised Release.  The first Special Condition provides that, upon McCarthy's completion of his term of imprisonment, he would immediately begin his term of supervised release in a facility where he will receive intensive mental health treatment.  Judgement at 1.  The court also recommended to the Bureau of Prisons that it "not provide the defendant access to any early release programs as part of his sentence in light of the special conditions of supervised release that have been imposed immediately upon the defendant's release."  Id. at 2.

While McCarthy was serving his sentence, a team, consisting of the United States Probation Officer who will supervise McCarthy, McCarthy's defense counsel and her staff, and a case counselor from the Bureau of Prisons, had worked together to secure McCarthy's admission to a facility where he can receive intensive mental health

---

[1] The court denies McCarthy's Motion insofar as it moves the court to order the BOP to designate a halfway house as the place of confinement where McCarthy would serve the remainder of his sentence.  The court has no authority to direct the BOP as to how McCarthy's sentence is carried out. See United States v. Kanabou, 726 Fed. Appx. 21, 25 n.1 (2d Cir. 2018) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence.") (citing 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment.")); see also United States v. Mustafa, 753 Fed. Appx. 22, 43 (2d. Cir. 2018) ("The Bureau of Prisons ("BOP") is charged by law with the responsibility for designating convicted federal defendants to appropriate penal facilities").

2

and substance abuse treatment upon release from prison consistent with the court's order. See id. 2–3. To facilitate McCarthy's ultimate discharge from the BOP on May 4, 2020, McCarthy was recently moved out from FCI Cumberland for transfer to FCI Danbury. It was expected that, while at FCI Danbury, the Greater Bridgeport Mental Health Center would interview McCarthy in advance of his discharge from Danbury. Id. at 3.

McCarthy's transfer to FCI Danbury never occurred. McCarthy was in transit at MDC Brooklyn when the BOP shut down all movement of inmates between facilities in response to the COVID-19 outbreak. Id. While incarcerated at MDC Brooklyn, New York City has become the epicenter of the COVID-19 epidemic in the United States. As expected, the virus has also spread to the city's prisons. On March 21, 2020, a person jailed at MDC Brooklyn was diagnosed with COVID-19, the first coronavirus case of a detainee in the federal prison system. See Michael Balsamo, 1st Fed Inmate Tests Positive for Corona Virus, Associated Press (Mar. 21, 2020), https://apnews.com/ec49cc7f4d1b00bc5010dfb6d935e042 (last visited Apr. 8, 2020). As of April 7, 2020, two inmates at MDC Brooklyn and six staff have tested positive for COVID-19. See COVID-19 Coronavirus, Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (las visited Apr. 8, 2020).

McCarthy is especially vulnerable to the virus because of his age and his health. McCarthy is 65 years old and suffers from a host of medical ailments, including chronic obstructive pulmonary disease ("COPD") and asthma. See BOP Health Problems (Doc. No. 73-6). Additional BOP records document that McCarthy suffered from pneumonia and lung infection in 2019 at MDC Brooklyn while in transit to his BOP designation. See

BOP Health Services Clinical Encounter (Doc. No. 99). According to the Center for Disease Control and Prevention, McCarthy's age and underlying medical conditions put him at a higher risk for severe illness from COVID-19. See Groups at Higher Risk for Severe Illness, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Apr. 8, 2020).

While incarcerated at MDC Brooklyn, GBMHC staff have been unable to connect with McCarthy, facilitate his screening, or speak with BOP mental health staff. Id. at 3. Furthermore, McCarthy's counsel has been able to speak with McCarthy only once briefly, in spite of many attempts to do so.[2] Id. at 4. Because counsel has not had the opportunity to speak with McCarthy in any significant way, it is unclear if McCarthy has submitted to the BOP an application for a sentence modification or compassionate release. The inability of counsel and GBMHC to communicate with McCarthy also frustrate discharge planning efforts and McCarthy's ability to comply with the court's Special Condition of Supervise Release involving inpatient mental health treatment.

On March 31, 2020, McCarthy filed an Emergency Motion (Doc. No. 88). In that Motion, McCarthy moves the court to release McCarthy from MDC Brooklyn, and allow him to serve the remainder of his sentence at a halfway house. Mot. at 1. In the alternative, McCarthy moves for a reduction of his term of imprisonment under the federal compassionate release statute. Id. (citing 18 U.S.C. § 3582(c)(1)(A)).

---

[2] Counsel for McCarthy report that, on fifteen separate occasions, counsel have contact BOP staff regarding discharge planning and to attempt to speak with Mr. McCarthy. See Notice of Supplemental Authority (Doc. No. 96) at 3. BOP staff were unresponsive. See id.

## III. DISCUSSION

McCarthy moves for release under section 3582(c)(1)(A) of title 18 of the United States Code. As amended by the First Step Act, section 3582(c)(1)(A) authorizes the court to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

Accordingly, in order to be entitled to relief under the statute, McCarthy must both meet the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. The court addresses these requirements in turn.

### A. Exhaustion

Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly enforced." United States v. Monzon, No. 99-CR-157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004) (internal quotation marks and alterations omitted)). However, as courts in this Circuit have held, the requirement of completing the administrative process may be waived "if one of the recognized exceptions to exhaustion applies." United States v. Perez, No. 17-CR-513-3, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020); see also

5

United States v. Colvin, No. 19-CR-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of [d]efendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A)."); United States v. Zukerman, No. 16-CR-194, 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020).

"Even where exhaustion is seemingly mandated by statute . . ., the requirement is not absolute." Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019). There are generally three bases for waiver of an exhaustion requirement. See Perez, 2020 WL 1546422, at *2 (discussing exceptions to statutory exhaustion in context of motion for compassionate release during COVID-19 pandemic).

"First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." Washington, 925 F.3d at 118. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile." Id. at 120. Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief," including situations where "the relief the agency might provide could, because of undue delay, become inadequate." Id. at 119-20. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." Id. at 119.

All three exceptions apply here. First, exhaustion would be futile. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile." Washington, 925 F.3d at 120–21. Here, McCarthy's age and underlying health

6

issues, when considered in light of the spread of COVID-19, demonstrate that further delay could likely result in such catastrophic health consequences, including death. See New York v. Sullivan, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even . . . death"). Even a few weeks' delay carries the risk of catastrophic health consequences for McCarthy. Second, "given the brief duration of Defendant's remaining term of imprisonment, the exhaustion requirement likely renders BOP incapable of granting adequate relief, as [his] sentence will likely already have expired by the time [his] appeals are exhausted and would certainly already have expired by the time the thirty-day waiting period ends." Colvin, 2020 WL 1613943, at *2. Finally, and obviously, McCarthy could be unduly prejudiced by such delay. Clearly, given his conditions, McCarthy is at great risk of succumbing to COVID-19. Further, he is prejudiced by his inability to obtain a mental health assessment that will allow him to satisfy the court's Special Conditions of Supervised Release and to receive desperately needed mental health treatment.

Thus, in light of the urgency of McCarthy's request, the likelihood that he cannot exhaust his administrative appeals during his remaining 26 days of imprisonment, and the potential for serious health consequences, the court waives the exhaustion requirement of section 3582(c)(1)(A). See Perez, 2020 WL 1546422, at *2 (waiving exhaustion requirement for sentence ending approximately three weeks after defendant's request to BOP); Colvin, 2020 WL 1613943, at *2 (citing Washington v. Barr and waiving exhaustion requirement where defendant had eleven days of custodial

sentence remaining); Zukerman, 2020 WL 1659880, at *2; United States v. Powell, No. 1:94-CR-316(ESH), Doc. No. 98, (D.D.C. Mar. 28, 2020) (finding administrative exhaustion futile, waiving section 3582(c)(1)(A)'s exhaustion requirement, and granting motion for compassionate release in light of COVID-19 pandemic and defendant's underlying health issues).

B. <u>Extraordinary and Compelling Reasons for Release</u>

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Congress never defined the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 944(t). Rather, Congress directed the Sentencing Commission to define the term. The Commission did so prior to the passage of the First Step Act, which amended section 3852(c)(1)(A) to allow prisoners to directly petition courts for compassionate release and removed the BOP's exclusive 'gatekeeper' role. See United States v. Rodriguez, No. 2:03-cr-00271, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020).

Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under section 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

(1)(A) Extraordinary and compelling reasons warrant the reduction; . . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

In subsections (A)-(C) of the Application Note to section 1B1.13, the Commission enumerated three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances.[3] See id. cmt. n.1(A)-(C). The policy statement also added a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[4] Id. cmt. n.1(D).

The court concludes that Defendant has demonstrated extraordinary and compelling reasons justifying his release under section 3582(c)(1)(A) and section

---

[3] As to Application Note 1(A), the court is unable to apply this subsection due to the total breakdown in communication with the BOP at MDC Brooklyn, and the inability of counsel to obtain records which might reflect conditions satisfying subsection (A) or to request that a physician provide such an assessment.

Similarly, although the court does not rely upon Application Note 1(B), the court does note that McCarthy is 65 years old and, to this court's understanding, COPD worsens with the aging process. The inability to obtain medical records frustrates this court's ability to determine whether he is suffering from aging-related health decline.

[4] Application Note 1(D)'s prefatory language requires a determination by the BOP Director. See U.S.S.G. § 1B1.13 cmt. n.1(D) ("As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."). The Sentencing Commission has not updated its policy statement to account for the changes imposed by the First Step Act, which removed the BOP's gatekeeping role from section 3582(c)(1)(A). "Accordingly, a majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'" Rodriguez, 2020 WL 1627331, at *4 (quoting United States v. Beck, No. 13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019)) (collecting cases).

This court finds the reasoning of those decisions persuasive. The court therefore concludes that it "has discretion to assess whether [McCarthy] presents "extraordinary and compelling reasons" for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement." Rodriguez, 2020 WL 1627331, at *6.

1B1.13 of the Sentencing Guidelines. McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments. These medical conditions are well-documented and serious, and they substantially increase his risk of severe illness if he contracts COVID-19. See Groups at Higher Risk for Severe Illness, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Apr. 8, 2020). The defendant's age and medical condition, taken in concert taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce McCarthy's sentence. See United States v. Gonzalez, No. 18-CR-1536155, 2020 WL 1536155, at *3 (approving compassionate release where defendant "is in the most susceptible age category (over 60 years of age) and her COPD and emphysema make her particularly vulnerable"); United States v. Hernandez, No. 18-CR-834, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) (finding "extraordinary and compelling reasons" to reduce the defendant's sentence due to defendant's asthma and the "heightened medical risk presented to [the defendant] by the COVID-19 pandemic"); Rodriguez, 2020 WL 1627331, at *2 (granting compassionate release because for a diabetic inmate, "nothing could be more extraordinary and compelling than this pandemic"); United States v. Campagna, No. 16-CR-78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."); Perez, 2020 WL 1546422, at *2 ("Perez meets th[e]

10

requirement [of Application Note 1(D)] as well, because he has weeks left on his sentence, is in weakened health, and faces the threat of a potentially fatal virus. The benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave."); see also United States v. Perez, No. 19-CR-297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to section 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19").

Accordingly, the court finds that McCarthy has demonstrated extraordinary and compelling reasons justifying his release.

C. Other Considerations

Section 1B1.13 of the Guidelines further provides that a court may reduce a term of imprisonment only if the court determines that "[t]he defendant is not a danger to the safety of any other person or to the community[,]" U.S.S.G. § 1B1.13(3), and only after the court considers the factors set for in section 3553(a) of title 18 of the United States Code, id.

First, the court concludes that McCarthy is not a danger to the safety of others or to the community. After serving 25 years imprisonment for a previous conviction, McCarthy was released to the Chase Center, a halfway house in Waterbury, Connecticut. According to records obtained from the Chase Center, McCarthy excelled there. He was "compliant with all program rules and regulations. He has been a model client in all respects. Mr. McCarthy has not violated any of the program rules." Chase

11

Center BOP Case Notes (Doc. No. 73-34), at 2. Although the instant crime for which McCarthy was convicted is no doubt serious, McCarthy's previous success at the Chase Center demonstrates that McCarthy's release today to a halfway house will not present a risk to others or to the community.

Finally, the court concludes that the factors set forth in section 3553(a) of title 18 of the United States Code weigh in favor of McCarthy's release. Because section 3553(a) establishes factors to consider in initially imposing a sentence, not every factor applies here. The applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; ... [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). The statute also mandates: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Id.

As to the first factor, the court has already noted that McCarthy's offense conduct—involving armed bank robbery—is very serious. As to McCarthy's history and

12

characteristics, the record clearly indicates that McCarthy requires intensive mental health treatment. McCarthy's release to a halfway house, where staff from Greater Bridgeport Mental Health Center can interview McCarthy in advance of admitting him for inpatient care, provides the best chance for McCarthy to receive the mental health care he requires.

The second factor is the need for the sentence imposed to serve the enumerated purposes of punishment. Id. § 3553(a)(2). The court should "impose a sentence sufficient, but not greater than necessary, to comply with [these] purposes." Id. § 3553(a). McCarthy has been incarcerated for more than 31 months, and now has only 26 days until his expected discharge.[5] The sentence that McCarthy has served is long enough to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of McCarthy. To prolong his incarceration further would be to impose a sentence "greater than necessary" to comply with the statutory purposes of punishment.

Finally, as only 26 days remain until McCarthy's expected discharge, his early release will not create any meaningful sentence disparities.

## IV. CONCLUSION

For the foregoing reasons, McCarthy's Emergency Motion (Doc. No. 88) is granted. McCarthy's sentence is reduced to time served pursuant to section

---

[5] Had McCarthy been transferred to FCI Danbury, there is a strong chance that he would have already been screened by the Greater Bridgeport Mental Health Center, and that he would have already been released into an inpatient mental health facility in compliance with this court's Special Conditions of Supervised Release. The court contemplated amending its recommendation to the BOP to permit this. However, Government's counsel assured the court that this recommendation was not the reason that McCarthy had not been granted early release but rather, that BOP could not locate his file.

13

3582(c)(1)(A) of title 18 of the United States Code, and he shall be immediately released from BOP custody.  Upon his release, McCarthy shall be subject to the additional conditions imposed in the court's Order of Release.  All other aspects of McCarthy's sentence remain unchanged.

**SO ORDERED.**

    Dated this 8th day of April 2020 at New Haven, Connecticut.

                                            /s/ Janet C. Hall
                                            Janet C. Hall
                                            United States District Judge